O

LINKS: 100, 101

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION as receiver for UNITED WESTERN BANK, F.S.B., <br> Plaintiff, <br> v. <br> COUNTRYWIDE FINANCIAL CORPORATION, *et al.*, <br> Defendants. | Case No. 11-ML-02265-MRP (MANx) <br><br> Case No. 11-CV-10400-MRP (MANx) <br><br> **Order Re Motions to Dismiss** |

## I. Background

Countrywide Financial Corporation, Countrywide Securities Corporation, Countrywide Capital Markets, LLC, CWALT, Inc., CWMBS, Inc. ("Countrywide,") and Bank of America Corporation and UBS Securities LLC (collectively, the "Defendants,") move to dismiss the amended complaint ("AC") filed by the Federal Deposit Insurance Corporation as receiver for United Western Bank ("Plaintiff"). This Court has previously ruled on the motion to dismiss the initial complaint, ECF No. 91 (June 15, 2012,) and assumes knowledge of the facts and posture of the case.

The only remaining direct legal claim brought by the Plaintiffs is for violation of Section 11-51-501(1)(b) of the Colorado Securities Act ("CSA").[1] That section forbids "any person" from making an "untrue statement of a material fact" "in connection with the offer, sale, or purchase of any security." Colo. Rev. Stat. § 11-51-501(1)(b) ("Section 501(1)(b)"). Countrywide moves to dismiss the amended complaint on two grounds. First, they argue that the claim is time-barred under the statute of limitations of the CSA. Second, they argue that the amended complaint fails to state a claim, since it does not plead an actionable misrepresentation and fails to include allegations of either reliance or loss causation, which is an element of the CSA. Bank of America Corporation ("Bank of America") moves separately to dismiss the successor liability claims.

The Court denies the motion to dismiss filed by Countrywide and UBS Securities LLC except as to alleged misstatements of owner-occupancy data and additional liens. The Court grants Bank of America's motion.

## II. Countrywide's Motion to Dismiss is Denied Except as to Allegations of Misstatements Regarding Owner-Occupancy and Undisclosed Liens

---

[1] Despite the Court's prior ruling dismissing federal law claims with prejudice, Plaintiff reasserts them here. These claims continue to be time-barred, and are hereby stricken.

Countrywide asserts that the Plaintiff's amended complaint was untimely and fails to state a claim. Colorado has a three-year statute of limitations for Section 501(1)(b) claims, beginning when the plaintiff discovers or should have discovered a misstatement. Colo. Rev. Stat. § 11-51-604(8) ("No person may sue under [Section 501(1)(b)] more than three years after the discovery of the facts giving rise to a cause of action . . . or after such discovery should have been made by the exercise of reasonable diligence."). Countrywide argues that United Western Bank should have discovered any alleged misstatements before April 23, 2007, three years before Plaintiff filed its original complaint in this case in state court. If the claim is timely, Countrywide argues that the amended complaint does not include specific allegations regarding misstatements by Defendants, and omits elements necessary to state a claim under the Colorado Securities Act.

For purposes of the motion presently before the Court, Plaintiff's claim must be considered timely. This Court has repeatedly stated that reasonable investors cannot, as a matter of law, be held to have discovered misstatements until after August 31, 2007. *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1182–83 (C.D. Cal. 2011) (refusing to dismiss when Defendants propose December 27, 2007 as date of alleged discovery); *Mass. Mut. Life Ins. Co. v. Countrywide Fin. Corp.*, No. 11-CV-10414-MRP ("*Mass. Mutual I*,") 2012 WL 1322884, at **3–4 (C.D. Cal. Apr. 16, 2012) (refusing to dismiss on date of August 31, 2007); *Fed. Hous. Fin. Agency v. Countrywide Fin. Corp.*, No. 2:12-CV-01059-MRP, 2012 WL 5275327, at *10 n.11 (C.D. Cal. Oct. 18, 2012) (same with date of September 6, 2007). While the amended complaint relies heavily on an automated valuation model ("AVM,") which uses data that could theoretically have been available as early as April 2007, the Court cannot hold as a matter of law, without further facts, that such data would have led a reasonable investor both to recognize the misstatements and to link those to the possibility that the securities purchased by United Western Bank would suffer losses. *Mass. Mutual I*, 2012 WL

1322884, at *4. Many of the relevant details of the "Countrywide saga" became available "between December 27, 2007 and February 14, 2008." *Allstate*, 824 F. Supp. 2d at 1183; *Mass. Mutual I*, 2012 WL 1322884, at *4 ("2007 was a turbulent time during which the causes, consequences, and interrelated natures of the housing downturn and subprime crisis were still being worked out.")

Countrywide also moves to dismiss on grounds the Court has already considered regarding the adequacy of the amended complaint.[2] The amended complaint plausibly states that loan-to-value ratios were inflated. The AVM used by the Plaintiff is not simply an opinion, the appraisals made in the "Offering Documents"[3] were actionable statements and Countrywide's mathematical arguments regarding margins of error are seriously flawed. *Bank Hapoalim B.M. v. Countrywide Fin. Corp.*, No. 12-CV-4316, slip op. at 12–14 (C.D. Cal. Dec. 21, 2012). The allegation that Countrywide misstated its underwriting standards in the Offering Documents is also plausible. *Id.* at 15. The owner-occupancy allegations do not plead a misstatement, since the Offering Documents revealed that owner-occupancy data was self-reported by borrowers. *Id.* at 15–16.[4]

Countrywide finally argues that the amended complaint does not include allegations of reliance or causation, either of which is necessary to plead a claim for violation of the CSA. The amended complaint does not include either element.

---

[2] Countrywide offers a creative duality: if the data in the AVM did not support a plausible claim in April 2007, then it cannot do so in 2012. "In other words, Plaintiff's claims are untimely, or they are inadequately pleaded; either way, they are subject to dismissal." Mem. in Supp. of Countrywide Defs.' Mot. to Dismiss at 14. This argument is nonsensical. It is possible that a reasonable investor could not have discovered the facts in April 2007, but facts revealed later, especially about decreases in the value of the securities, completed support for a plausible claim.

[3] The "Offering Documents" refer to prospectuses, prospectus supplements, and other documents filed with the Securities and Exchange Commission pursuant to which the securities Plaintiff purchased were created.

[4] The allegation of additional undisclosed liens fails to state a claim for the same reason, since the prospectus supplements stated that the underwriting guidelines did not prohibit secondary financing.

1  At best, Plaintiff includes mere labels and facts that do not support the inference
2  that they actually relied upon the Offering Documents.  *See* AC ¶ 35 ("reasonable
3  investor considers LTV critical to the decision whether to purchase a certificate in
4  a securitization of mortgage loans"); ¶ 91 ("ratings were important to the decision
5  of any reasonable investor whether to purchase the certificates. Many investors,
6  including UWB, have investment policies that require a certain minimum rating for
7  all investments. The investment policy of UWB was to purchase only certificates
8  that were rated at least double-A.").

9  However, the Court believes that neither reliance or causation is an element
10 of Section 501(1)(b).  The Colorado Supreme Court looks first "to the plain
11 language of the controlling statutes under our law" when interpreting the CSA.
12 *Rosenthal v. Dean Witter Reynolds, Inc.*, 908 P.2d 1095, 1100 (Colo. 1995).  In
13 full, Section 501(1)(b) forbids any person in connection with the sale of a security
14 from making "any untrue statement of a material fact or [omission of] a material
15 fact necessary in order to make the statements made, in the light of the
16 circumstances under which they are made, not misleading."  The private right of
17 action for enforcing Section 501(1)(b) grants the person who bought a security the
18 right to sue "[a]ny person who sells a security in violation of section 11-51-
19 501(1)(b)," whenever the purchaser did not know of the untruth or omission.  Colo.
20 Rev. Stat. § 11-51-604(4) ("Section 604(4)").  Neither section mentions anything
21 about reliance or causation.

22 Faced with this plain text, the Countrywide Defendants attempt to rely on
23 *Rosenthal*.  *Rosenthal*, 908 P.2d at 1102 ("in order to state a claim pursuant to
24 section 11-51-125(2), a plaintiff must allege the following . . . that plaintiff relied
25 upon defendant's conduct to his or her detriment, or that defendant's conduct
26 caused plaintiff's injury.").  However, that case interpreted Section 11-51-125(2)
27 of the CSA, the identically worded predecessor statute of another private cause of
28 action, Section 11-51-604(3).  Section 11-51-604(3) and its predecessor prohibit

1  securities fraud, meaning that claims under the section can only be brought against
2  defendants who had knowledge that their representations were false. *Id.* at 1100
3  (citing Colo. Rev. Stat. § 11-51-125(2) as providing a private right of action
4  against "[a]ny person who recklessly, knowingly, or with an intent to defraud sells
5  . . . a security").

6        There is no such knowledge requirement in Section 604(4) or 501(1)(b),
7  which are not securities fraud statutes, but instead are statutes with a broader
8  sweep regulating narrower securities sales. That means that *Rosenthal* is not
9  controlling, and provides another reason beyond the plain text that reliance or
10 causation is not an element of Section 501(1)(b). The Colorado Securities Act
11 parallels the federal securities laws. *Goss v. Clutch Exch., Inc.*, 701 P.2d 33, 35
12 (Colo. 1985). As the Supreme Court has recognized, reliance is a long-standing
13 element of common law fraud, and therefore is also an element of a statutory fraud
14 claim. *Basic Inc. v. Levinson*, 485 U.S. 224, 243 (1988). Section 501(1)(b)
15 parallels Section 12(a)(2) of the Securities Act of 1933, not the fraud prohibitions
16 in the Securities Exchange Act of 1934. *Goss*, 701 P.2d at 35 (interpreting the
17 predecessor statute of Section 501(1)(b) as "virtually identical to [what was then
18 denoted] section 12(2) of the Securities Act of 1933."). "[P]laintiffs bringing
19 claims under section[]. . . 12(a)(2) need not allege scienter, reliance, or loss
20 causation." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359–60 (2d
21 Cir. 2010). Therefore, claims brought under Section 604(4), like its federal
22 parallel, need not allege reliance or loss causation.[5]

23       Countrywide argues that there is no "functional difference between Sections
24 11-51-604(3) and 11-51-604(4) other than Section 11-51-604(3)'s scienter
25 element." Reply Mem. in Further Supp. of Countrywide Defs.' Mot. to Dismiss at

---

[5]     Indeed, *Rosenthal* relies heavily on federal case law like *Basic* and others interpreting fraud statutes in order to define the reliance or causation element of Section 11-51-125(2).

18. Since the Colorado Supreme Court held that reliance or causation is an element of Section 11-51-604(3), it must also be an element of Section 604(4). *Id.* This argument is flawed because the text of federal fraud law also omits any requirement of reliance or causation. *Basic*, 485 U.S. at 243. Section 10(b) of the 1934 Securities Exchange Act makes unlawful the use of a "manipulative or deceptive device" in connection with the purchase or sale of any security, which the Supreme Court has interpreted as adding the element of scienter to any private cause of action. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 197–214 (1976). Under federal law, if a cause of action has a scienter requirement, then the claim is for fraud and either reliance or causation is an element. *Basic*, 485 U.S. at 243. If the cause of action lacks a scienter requirement, then it is not a fraud claim, and does not require reliance or causation. *Morgan Stanley*, 592 F.3d at 359–60. The same is true in the CSA – the fraud statute, Section 11-51-604(3), has a scienter element and consequently must have reliance or causation, but since Sections 501(1)(b) and 604(4) have no scienter element, the claim does not require reliance or causation.[6]

Countrywide inveighs against what it sees as overreliance on federal parallels, since the Colorado Supreme Court has held that though "federal precedent is persuasive in construing similar language in our securities laws," reviewing courts should look first to "plain language of the controlling statutes under our law." *Rosenthal*, 908 P.2d at 1100. As mentioned, the plain language of Sections 501(1)(b) and 604(4) does not mention reliance or causation. The federal statutory parallels, and the case law interpreting those statutes, provide further evidence that reliance or causation is not an element of the claim. The federal

---

[6] The only case Countrywide cites to the direct contrary improperly conflates Section 501(1)(b) and Section 12(a)(2) of the 1933 Act with Section 10(b) of the Securities Exchange Act as "anti-fraud provisions." *Grace Bros., Ltd. v. Futro*, No. 06-cv-00886-PSF, 2007 WL 3023325, at **2–3 (D. Colo. Oct. 12, 2007). Since securities fraud claims require reliance or causation, the court erroneously held that Section 501(1)(b) required that element. *Id.*

parallels serve only to clarify any lingering ambiguity from the plain text.  The statute Plaintiff seeks to enforce does not require allegations of reliance or causation.  The amended complaint states a claim as to those misstatements that are actionable.

### III. Plaintiff has not Pled that Bank of America is Liable as Successor to Countrywide

Plaintiff asserts claims against Bank of America that this Court has considered many times before, that Bank of America is liable as Countrywide's successor, or that Bank of America assumed Countrywide's liabilities.  The first question in resolving this inquiry is which state's law Colorado would apply to this question.  The Colorado Supreme Court follows the Restatement (Second) of Conflict of Laws.  *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 508 (Colo. 2007).  Colorado has cited and applied Section 302 of the Restatement, which looks to the local law of the state of incorporation to determine issues involving the internal structure of a corporation. *Great W. Prods. Coop. v. Great W. United Corp.*, 613 P.2d 873, 875 n.2 (Colo. 1980).  In the absence of any countervailing interest of Colorado, the law of the state of incorporation will apply to these corporate "internal affairs." *In re ms55, Inc.*, No. 10-CV-00042-PAB, 2011 WL 1084967, at **4–6 (D. Colo. Mar. 21, 2011) (applying the "internal affairs" doctrine of Section 309 of the Restatement).  Assumption of liabilities and *de facto* merger analysis are issues involving the structure and internal organization of a corporation. *Allstate*, 824 F. Supp. 2d at 1172–74.

In this case, Colorado has no relevant interest, since the question of *de facto* merger and assumption of liabilities is unrelated to any Colorado party.  Therefore, following Section 302, Colorado courts would apply the law of the state of Delaware, since Delaware is the state of incorporation for each relevant entity. *Mass. Mut. Life Ins. Co. v. Countrywide Fin. Corp.*, No. 11-CV-10414, 2012 WL 3578666, at *2 (C.D. Cal. Aug. 17, 2012).  Under Delaware law, the amended

8

complaint does not state sufficient facts to claim either a *de facto* merger or assumption of liabilities. *Minn. Life*, slip op. at 13–15. The cause of action against Bank of America is dismissed with prejudice.

### IV. Conclusion

For the reasons given above, the Court grants in part and denies in part the Defendants' motions to dismiss. The Court dismisses claims against Countrywide and UBS Securities LLC based on allegations involving owner-occupancy and undisclosed liens. The Court dismisses all claims against Bank of America as successor. All dismissals are with prejudice. The motions are otherwise denied.

**IT IS SO ORDERED.**

DATED: January 3, 2012

                Hon. Mariana R. Pfaelzer
                United States District Judge